IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOLDOPP ENERGY, LLC, : | |
| A TEXAS LIMITED LIABILITY COMPANY, : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 5:23-cv-02609-JMG |
| : | |
| BILL STEWART, *et al.* : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                                          **July 11, 2023**

Plaintiff Goldopp Energy, LLC ("Goldopp") has brought this action against defendants Bill Stewart ("Stewart") and Dynamics LLC ("Dynamics"), alleging claims of Fraud, Conversion of Plaintiff's Bitcoin Miners, Conversion of Plaintiff's Deposit Funds, Breach of Contract, Deprivation of Use, and Unjust Enrichment. On the afternoon of Friday July 7, 2023, Plaintiff filed their complaint and an ex parte motion for a temporary injunction. Currently pending is Plaintiff's motion. For the reasons set forth below, Plaintiff's motion is denied.

**I.     BACKGROUND**

   **A.  Factual Background**

Defendant Stewart operated a bitcoin mining operation under the company name Dynamics in a warehouse located at 850 Industrial Road in Madisonville, Kentucky. Compl. at ¶ 8, ECF No. 1. On or about February 17, 2023, Plaintiff and Defendant Dynamics, by and through its agent Stewart, entered into a contractual agreement ("the Agreement"), whereby Dynamics would install and manage bitcoin mining computers owned by Plaintiff at the Dynamics facility located at 850 Industrial Road ("the Facility"). *Id.* at ¶ 21. The terms of the

agreement included requirements for power supply and a temperature controlled environment, damages in the event of breach, and the recoupment of lost profits, and it forbid Defendants from removing any of the mining computers from the Facility unless Plaintiff wished to relocate them. *See id.* at ¶¶ 22-29. In accordance with the terms of the Agreement, on or about February 21, 2023 Plaintiff delivered 720 bitcoin mining computers to Defendants at the Facility. *Id.* at ¶ 31. On or about February 22, 2023, Plaintiff delivered another 784 bitcoin mining computers to Defendants at the Facility. *Id.* at ¶ 32. Plaintiff also paid Defendants money to secure services under the terms of the agreement. *Id.* at ¶ 35.

By March 1, 2023, Defendants were in breach of the Agreement, as they only had approximately 300 of the computers in operation. *Id.* at ¶¶ 38-40. After Plaintiff noted Defendants were in breach of the Agreement, the parties modified the agreement ("the Addendum"), wherein Defendants agreed to have 260 of Plaintiff's computers in operation by April 21, 2023. *Id.* at ¶¶ 45, 48. Under the terms of the Addendum, Stewart would keep the $254,783 already paid as the electricity and service fee until that sum depleted to $39,546, which was the cost of operating 260 of the mining computers for one month. *Id.* at ¶ 48. The Addendum also allowed Plaintiff to terminate the agreement upon any breach by Defendants, and that in the event of termination Defendants were to refund any unused portion of the $254,783. *Id.* at ¶ 49.

On or about April 14, 2023, Plaintiff recovered 1,244 of their bitcoin mining computers, leaving 260 at the facility. *Id.* at ¶ 53. On April 19, 2023, Plaintiff informed Defendants they would terminate the Agreement if Stewart did not have the 260 computers up and running by April 21, 2023. *Id.* at ¶ 54. Defendants did not have the 260 computers in operation by that date. *Id.* at ¶ 59. Plaintiff tried to contact Stewart several times between April 21, 2023 and May 8, 2023, but was unsuccessful. *Id.* at ¶ 60. On May 8, 2023, Plaintiff sent a notice of termination

of the Agreement and a demand for the return of the 260 machines. *Id.* at ¶ 62.

Prior to entering into the agreement and unbeknownst to the Plaintiff, Defendants defaulted on their January 2023 and February 2023 rent payments to the owner of the property located at 850 Industrial Road. *Id.* at ¶ 18-19. On February 16, 2023, Defendants were served a Notice to Vacate that property. *Id.* at ¶ 20. Defendants also defaulted on their obligation to pay rent in March and April 2023. *Id.* at ¶¶ 39, 44. On March 20, 2023, Lamon Enterprises, Inc. ("Lamon") brought a forcible detainer action against Defendants. *Id.* at ¶ 41. On April 19, 2023, an eviction notice was entered in the Hopkins District Court, and the forcible detainer complaint was set for trial on May 2, 2023. *Id.* at ¶ 55. Lamon then brought another forcible detainer action against Defendants on or about April 19, 2023. *Id.* at ¶ 56. On May 2, 2023, forcible detainer judgment was entered against Dynamics by the Hopkins District Court. *Id.* at ¶ 61.

On or about May 15, 2023, Defendants vacated the facility and removed the machines without notifying Plaintiff. *Id.* at ¶¶ 63-64. Defendants have not returned the machines or the deposit funds to Plaintiff despite Plaintiff's repeated demands. Id. at ¶ 66. Plaintiff recently discovered that Stewart is currently located at a facility in Birdsboro, Pennsylvania. *Id.* at ¶ 67.

### B. Procedural History

Plaintiff filed their complaint and ex parte motion on July 7, 2023. *See* ECF No. 1. Plaintiff claims that a temporary injunction is warranted because they are likely to succeed on the merits of its claim for Conversion of Plaintiff's Bitcoin Miners (Count II), they are likely to suffer irreparable harm without the Court's intervention, and the balance of equities strongly favors issuance of a temporary injunction.

## II.     LEGAL STANDARD

Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir.1994)). "A temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Zaslow v. Coleman*, 103 F.Supp.3d 657, 661 (E.D. Pa. 2015) (citing *J.O. v. Orange Twp. Bd. of Edu.*, 287 F.3d 267, 273 (3d Cir.2002)). "The standard for analyzing a motion for a temporary restraining order is the same as that for a motion seeking a preliminary injunction." *Mehl v. Smith*, No. 1:20-CV-1173, 2022 WL 481785, at *2 (M.D. Pa. Feb. 16, 2022). The decision of whether to grant or deny temporary injunctive relief is within the sound discretion of the district court. *Schrader v. Sunday*, 603 F. Supp. 3d 124, 133 (M.D. Pa. 2022).

In determining whether to issue temporary injunctive relief, "a court must consider: '(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party, and (4) whether the relief is in the public interest.'" *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102–03 (3d Cir. 2022) (quoting *Swartzwelder v. McNeilly*, 297 F.3d 228, 234 (3d Cir. 2002)). The party moving for temporary injunctive relief "must meet the threshold for the first two 'most critical' factors[.]" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017); *see Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) ("The first two factors are prerequisites for a movant to prevail."). District courts need not assess the final two factors unless the moving party is able to establish the first two factors. *Greater Philadelphia Chamber of Com. v. City of*

*Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020).

**III.     DISCUSSION**

As discussed above, Plaintiff must meet the requirements for the first two factors in order to prevail. *See Holland*, 895 F.3d at 286. Upon consideration of Plaintiff's motion, they are unable to meet that threshold with respect to the second factor - whether irreparable harm would result if the relief sought is not granted. The Court will therefore focus its inquiry on this factor.

**A.    Irreparable Harm**

In considering a request for temporary injunctive relief, a court must consider whether Plaintiff has demonstrated they will suffer irreparable harm if relief is not granted. *22nd Century Techs., Inc.*, 2023 WL 3409063 at *5. To establish this factor, a Plaintiff "[m]ust demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotation marks and citation omitted). The alleged harm "'must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* at 91-92 (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (citations omitted)). The alleged harm must also be "immediate" or a "presently existing actual threat." *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (cleaned up).

Here, Plaintiff fails to meet this requirement. Plaintiff states they have a property interest in the 260 computers they allege are currently located in a warehouse in Birdsboro, Pennsylvania, that these computers are worth $1,000 each, and that the computers are unable to

generate value each day they are not being used by Plaintiff. Plaintiff further states that the recent information their counsel received as to the alleged whereabouts of the computers provides a brief opportunity to reclaim them from Defendants. But Plaintiff has not shown this harm is the type that "cannot be redressed by a legal or an equitable remedy following a trial." *See Campbell Soup Co.*, 977 F.2d at 91. And their ability to state with specificity the damages involved – namely the $260,000 for the computers – weighs against the relief Plaintiff seeks. *See 22nd Century Technologies, Inc.*, 2023 WL 3409063 at *5 ("This Court has long recognized that a preliminary injunction is appropriate when a plaintiff's injury is compensable by monetary damages but the amount of those damages is difficult to prove with reasonable certainty; *Reilly*, 858 F.3d at 179 n.4 ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm."). Additionally, Plaintiff has not shown these computers hold any "serious or substantial value," nor do they have any "peculiar" characteristics that might deem temporary injunctive relief appropriate. Because Plaintiff has failed to show irreparable harm would result if the relief sought is not granted, they are unable to establish the first two factors in this analysis. *See Holland*, 895 F.3d at 286. Accordingly, the Court need not consider the other factors. *See Greater Philadelphia Chamber of Com.*, 949 F.3d at 133.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary injunction is **DENIED**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge